The fourth district appellate court of the state of Illinois has now convened. The Honorable Peter C. Cavanaugh presiding. Good afternoon. We'll next call for dash 22 dash 0330 people the state of Illinois. I believe versus Deontay x Murray appellants counsel for the appellant to please state your name for the record. So Lucy your honor from the office of the state appellate defender. Thank you for the appellee. David Robinson for the state Your Honor, with a 711 from the U of I clinic. Hi, my name is coffee Modi. Very well thank you. Now, if we may proceed. Thank you, Your Honor. Good afternoon and may it please the court counsel. My name is Sarah Lucy from the office of the state appellate defender and I represent the appellate Deontay Murray. Because this case becomes comes before this court on a post conviction petition dismissed at the first stage. The primary question before this court is whether Mr. Murray presented the gist of a constitutional claim in his petition. In 2013, our Supreme Court ruled in people the angular that the aggravated unlawful use of a weapon statute, under which Mr. Murray's current conviction rests, which is subsection three, a is unconstitutional. Specifically, that subsection of the aggravated unlawful use of a weapon statute prohibits the carrying of a weapon anywhere that isn't one's home place of abode or were there an invitee on that land. While the Supreme Court has upheld other subsections of that statute, it has held that particular statute unconstitutional. It is reaffirmed that in Burns, where it expanded the what was unconstitutional under that statute in 2015, and upheld it again and people the mostly in 2015, where it determined that the proper action when a conviction under the unconstitutional statute from is to vacate that conviction. So counsel, good afternoon. In arguing here that the trial court erred in dismissing the post conviction petition at the first stage. Are you not assuming that the trial court had discretion to ignore the Supreme Court's mandate to sentence this defendant. It is a difficult position that the trial court was in I certainly did not envy the trial court at all. It is certainly a well, well settled law that courts below have no choice but to follow the mandate, as it is entered. However, there's also long settled history from the Illinois Supreme Court that constitutional convictions, cannot stand. This is violating, not just Illinois precedents or the Illinois mandate in this case. Right now Mr Murray's conviction is violating the United States Constitution. So what we, we as an appellate court cannot do anything about that can we it's the Supreme Court, that would have to do something about that we cannot. What can, what can we do as an appellate court what authority, can you give us that one would allow the trial court to have done anything other than execute the mandate, or allow us to do anything else. Yes, Your Honor, the authority is in ray energy, a 2018 case from our Supreme Court, which explored all the various reasons why no court in this land is authorized to have a unconstitutional conviction stand. Why each court in this state has the obligation to vacate a conviction that is unconstitutional. And so while we sorry I believe I cut you off, Your Honor. No, I'm just, I'm sorry I shouldn't have been shaking my head you go ahead and finish. Go ahead. So while this is a tricky position where the Supreme Court, quite frankly, it appears, made a mistake, and and I cannot speak to why appellate counsel who represented Mr. Murray during that Illinois Supreme Court did not seek immediate review from the Illinois Supreme Court, saving us all from significant headache. The fact is we have contradictory Supreme Court instructions on this matter. In one case there's the 2019 instruction from the Illinois Supreme Court saying sentence him under the statute. On the other hand, there is decades of case law from our Supreme Court saying no unconstitutional convictions may stand that they are void ab initio, it is as if the law, never existed, that neither trial court, nor an appellate court, nor indeed our Supreme Court has the power to ignore that or to to sweep it away or say well another court can take care of it. Well, but then it's the Supreme Court that has to make that decision is it not I mean our Supreme Court has held that a trial court must follow the Supreme Court's mandate, even if it's erroneous so we've got Winchester we've got bugs we've got Smith. What cases contradict those that I just mentioned. No cases directly contradict them Your Honor, it's, it's a case of the Supreme Court versus the Supreme Court. On one hand, there's the Supreme Court's own mandate of you must follow our edicts, even if we are wrong we are right versus the Supreme to is, does this case, or I'm sorry does this court follow case law, or is this court mandated to follow the United States Constitution, even when doing so, does create a dissonance with our Illinois Supreme Court and certainly if this court does order issue an order instructing the trial court to vacate this conviction on remand, the state is free to file a petition for leave to appeal with our Supreme Court. If our Supreme Court, somehow wanted to overturn Aguilar and and all the 10 years of precedence. And, you know, I can only point to the fact that both the Supreme Court, and this court has continued to say favorably to people be Aguilar since the 2019 decision and people be Murray so it's very clear that no court considers Aguilar to be bad law to have been overturned by the Supreme Court's decision in Murray, meaning that the constitutionality is still the biggest issue here I believe the bigger of the two. Despite, as I acknowledge the uncomfortable position that that puts this and the trial court in when they have to turn away from the Supreme Court's mandate because it is unconstitutional under its own law. Well, how do we have the power and the authority to ignore the Supreme Court's mandate or to look at what the trial court and say that it should not have followed the Supreme Court's mandate. Specifically through in Ray and G where the Supreme Court has instructed courts that they are not authorized to allow an unconstitutional conviction to stand. That's your contention that that's the quote higher eat it, but I don't know of any authority that would allow us and allow the trial court to ignore the Supreme Court's own edict. I mean, I agree with you. It's a conundrum. There's no question. I mean, that's you're certainly right about that, but I'm still struggling with how the trial court could have done something differently here. And your honor, I wouldn't disagree with you that the trial court did in fact have its hands tied. I believe that the trial court did have to enter the exact sentence that it did enter because it was bound. It was given that instruction. This court is now in the position, not just to follow the Supreme Court mandates, but to evaluate the Supreme Court's mandate in the 2019 people be Murray with case law that has come out and decide whether or not it was a simple typographical error. Whether it was, dare I say a mistake, I would never accuse the Illinois Supreme Court of making a mistake, especially given that I'm going to appear in front of them tomorrow. However, the court in Ray and G did admit while overturning its decision and people be McFadden that it unfortunately sometimes is a fallible court, just because there was a mistake in this case. And I do believe that mistake is the proper word to use here. As I mentioned, not just this court, every other appellate court and our Supreme Court has continued to use Aguilar and its progeny as valid case law that continues to be good case law. If the court had intended on overturning Aguilar, it certainly would have done so in a more assertive manner. It would have mentioned Aguilar by name in the 2019 Murray case. It would have specifically stated for reasons and given reasons why it was changing its analysis of the 2nd Amendment, which, as I said, has been serving Illinois well for over 10 years. I truly believe that the constitutional question here trumps the mandate in this case. And what case law, excuse me, counsel, what law says that the constitutional aspect of this trumps the mandate of the Supreme Court? What case are you relying on for that, that we can rely on to go back to the Supreme Court and say, you made a mistake. Trial court shouldn't have followed your mandate and we're going to go ahead and vacate the conviction. We, as an appellate court, are going to correct your error. What case are you relying on and suggesting we rely on? Your honor, I'm not able to provide exact case law that is on point for that proposition. And that is simply because this is not a situation that happens very often. I, I've never found a Supreme Court decision, and I have searched extensively during over the course of this case where the Supreme Court has issued an unconstitutional mandate. So, for instance, in People v. Brown, which is a 2022 Illinois Supreme Court case, the court issued a mandate that the trial court failed to follow. But it was simply because the trial court disagreed. It was not because the court itself mandated an unconstitutional issue. So you're saying it matters the type of error that we have here. So there are errors and there are other type of errors and that we, as an appellate court, can intervene when it's a certain kind of error. I mean, because the case law, you know, talks specifically about no matter if the mandate is of the court is erroneous of the Supreme Court, it doesn't matter. So you're saying that different kind of error relating to unconstitutionality is different. Yes, Your Honor, I am suggesting that when the decision would fly directly in the face of the United States Constitution, that our Supreme Court has held that no court is empowered to uphold such a conviction. Where can we find that exact language? In In Re NG, and I can pull up the exact citation, though it is cited in my brief multiple times. And in that case, it goes through, you know, different states and the supremacy clause and how states are really not empowered to to either pass laws or maintain laws or maintain convictions that that fly in the face of our Constitution, not just of the Illinois Constitution, but of the United States Constitution. This is a Second Amendment right that our Supreme Court has already decided, has already upheld, has already expanded and has told courts and instructed courts that constitutionally or I'm sorry, unconstitutional convictions may not be upheld. They must be vacated. Therefore, even if this court believes that it should go up one step further to the Illinois Supreme Court, and I won't say that I disagree, but it should do so as the state's petition for leave to appeal, because it is more important that this court uphold the United States Constitution in this case. If I may, but is it the mandate, in fact, is the judgment of the Supreme Court that is promulgated through the trial court? And so if the trial court has to abide by that mandate from your position, I think you agree with that. I think the question that has been raised, and I appreciate the argument, but isn't the remedy really with the Supreme Court? What authority would the appellate court have? I think that's our question. What authority do you specifically have that we can acknowledge and remedy what you're proposing is an error by the Supreme Court? What authority specifically is there? Other than I appreciate that you are arguing the NRA and G case, what other specific authority do you have for this proposition that if the error is related to this constitutional issue that we as the appellate court have the authority to change an order or correct an error of the Supreme Court? Your Honor, as I stated, I was not able to find authority directly on point where our Supreme Court has issued an unconstitutional decision and demanded that lower courts, including appellate courts, uphold that unconstitutional mandate, no matter what. I've not been able to find case law that states that unconstitutional convictions must be upheld because the Supreme Court ordered it to be so. I have found cases that support this court's position. Again, people need Brown and all the other cases that Justice DeZenof cited to earlier for the proposition that courts must follow the Illinois Supreme Court, but that is generally when there's a mere disagreement or a misunderstanding or this court remanded for this to be vacated and they did a resentencing. I was not able to find a case from our Supreme Court where it said we made an unconstitutional decision and we would like lower courts to uphold the unconstitutional decision. That is authority that I have not been able to find. So you're suggesting, regardless of the fact that there is no authority, that we go ahead and do that? Have you looked at state authority? Your Honor, I believe I've looked high and low. If this court comes up with a case that states one of these propositions, I certainly will have mud on my face. But from my research, I cannot find a case either from the Illinois Supreme Court or from the appellate courts that stands for the proposition that an unconstitutional mandate from the Supreme Court must be upheld by our appellate courts. Well, Brown comes close, does it not, when it says that this court, in essence, I'm paraphrasing, has no authority to review, much less reverse the Supreme Court's judgment. And in fact, Justice Michael Burke's dissent even agrees with the majority on that point, that a judgment of the Supreme Court cannot be reviewed by the appellate court. I don't know how we get past that. I just don't. Brown, however, Your Honor, is almost the inverse of the case that is currently before this court, in that the trial court continued to look for a constitutional reason at the trial court level, and the Supreme Court kept saying, no, this does not need to be decided on a constitutional issue. There are other grounds, and this court will not reach a constitutional issue unless there is no other resolution to the case. So in Brown, it's almost an anti-constitutional mandate. The Supreme Court is saying, do not consider the Constitution. Here, this court has no choice. There's absolutely no way that this court cannot consider the constitutional issue, which is why it is so striking that the trial court, when denying his petition for leave to appeal, then said, there are no constitutional issues in this post-conviction petition when, indeed, there seems to be no question, though please do correct me if I'm wrong, there seems to be no question at this court that people v. Aguilar did find this statute to be unconstitutional. So the very fact that there is the gist of a constitutional claim in his post-conviction petition means that the trial court's decision dismissing his petition at the first stage was erroneous. So even if this court just focuses in on the narrowest of questions, which is, did the trial court err when it dismissed Mr. Murray's first stage post-conviction petition as frivolous and patently without merit, I believe this court will find that it was error. That there is at least the gist of a constitutional claim when Mr. Murray is sitting here with an unconstitutional conviction and a sentence that is yet to be served on that unconstitutional conviction. We can all agree with your argument, and that's the case, except that we lack the authority to act, and that's where your argument doesn't provide us with what we need to take the next step. Your Honor, I will simply have to stand on the – again, I'm going to sound like a broken record, and I do apologize. In re-en-gee, I truly believe provides this court with the authority that this court will find that the Supreme Court has made it clear that even it is not authorized to uphold an unconstitutional conviction. Therefore, this court is not authorized to uphold an unconstitutional conviction, even if it comes from our Supreme Court. And I see that my time has elapsed. Thank you, Your Honors. I'm going to just ask one question because I didn't drill down on NG in my prep for this hearing. Did that deal with a mandate? Did that case deal with a mandate situation? It did not deal with a mandate situation. I will confess that the situation in in re-en-gee is distinguishable. However, the analysis that is included is significant, is intricate, and does go into why no court can go against our Supreme Court because of the supremacy clause. And I will say that in re-en-gee, the father had his parental rights terminated because he was a habitual offender. He had three felonies. One of them was an AAUW. On review, the Supreme Court said that it could not rest – his parental termination could not rest on that statute because it was void ab initio. No court in the entire land had the authority to acknowledge that conviction because it violated the Second Amendment of the United States Constitution. Very good. Thank you. You've answered my question. Is there any follow-up questions to my question? No. Very good. Thank you, Counsel. Thank you. Counsel for the Pele argument. Thank you. May it please the Court, Counsel. My name is Kavi Modi, and I am a 711 student from the University of Illinois College of Law, arguing on behalf of the people of the state of Illinois. I want to begin this argument with language from the Illinois Supreme Court in Pele v. Murray, the defendant's 2019 appeal. In that, the Supreme Court stated that for the foregoing reasons, we reverse that portion of the judgment of the appellate court affirming defendant's conviction for that offense and remand to the circuit court for sentencing on the conviction for aggravated, unlawful use of weapon. And then the Supreme Court cites the statutes, particularly A3A, which was held unconstitutional in Pele v. Aguilar. The state's argument here does not contend that Aguilar is now constitutional or has changed, but instead that the Illinois Supreme Court, in setting forth that mandate, they essentially had no choice but to issue that instruction because neither of the parties, neither the state nor the defendant in that appeal, argued the constitutionality of the AUW sentence conviction. And so the Illinois Supreme Court is not in the business of making arguments that either parties have made, and so it had no choice but to. This was not a mistake, and the clinic, myself, along with the other students in the structure, actually thought that this was a mistake. But upon further consideration, the contention that it's a mistake is unreasonable because the Illinois Supreme Court just can't make arguments that weren't presented to it. They can't rule on issues that were not presented to it. And therefore, the Illinois Supreme Court themselves had no choice but to make this alleged instruction, this alleged unconstitutional mandate. We reason that the Illinois Supreme Court thought that the parties would then find out that this sentence was unconstitutional and would bring it up in an appeal later, which has happened. But the state believes that this venue is not the proper area in that the defendant actually filed a PLA or asked for a supervisory opinion from the Illinois Supreme Court and not this court. Of course, as you all know, that this is the Intermediate Appellate Court, and the mandate came from the Illinois Supreme Court, which has supervisory authority over all courts in Illinois. And we believe that this court has no power but to affirm the trial court's ruling. For instance... Excuse me, counsel. Good afternoon. Yes, Justice. Why doesn't N.G., the case cited by opposing counsel in her reply brief, why doesn't N.G. give us the authority to reverse the decision of the trial court? So it's been a while since I've read the N.G. opinion in full, but I believe from the language that I have in my preparation and defense brief that a void order, they say, may be attacked at any time in any court. An argument that an order or judgment is void is not subject to waiver. And so I don't believe that N.G. directly states that the Illinois Appellate Court could then overrule Illinois Supreme Court instruction. And that for that to happen is a very, I think, important piece of law and a piece of precedent that this court would be creating, and that it may not be under this court's authority to go that far. We believe that it's better for this court to affirm and that the defendant should go to the Illinois Supreme Court to seek the relief they need. And importantly, the defendant's not asking for entirely reversal of his sentence. Instead, he's asking for an advancement to the second stage and appointment of new post-conviction counsel. Well, to what end, counsel? I mean, obviously, that's a means to an end. There has to be some relief. And I guess my question and concern is how can the law leave this defendant without a remedy? Right. And I think so. I don't think that the defendant is without remedy. I think the remedy is a direct appeal instead of a post-conviction appeal. A direct appeal, excuse me, to whom? For what? To the Illinois Supreme Court based on this unconstitutional or based on their instruction, asking them for relief. Because we believe that the Illinois Supreme Court, since the instruction, the mandate came from them, and the trial court was simply trying to abide by that, the defendant can ask for a supervisory order to gain the relief that any relief they're seeking or more information that they're seeking. It's important because the state has not had the opportunity, except in this court, to address the arguments that the defendants are making. There's not been briefing on the issue or trial-level arguments. And so we think that it's important for the defendant to go to the Illinois Supreme Court directly and that this court can't, doesn't have the authority to do that. So the judge suggested, or in the trial court, the judge was confused, but also stated that the Illinois Supreme Court has a sua sponte duty to vacate any unconstitutional conviction. But since that was not raised in the defendant's previous appeal, they couldn't do that there, because no one had argued that he was unconstitutionally convicted. In 2019, Murray argued, I believe, two or three claims that his sentence violated proportionate penalties and that the state did not prove that he was a part of a street gang, which the Illinois Supreme Court agreed with, and that's why they overturned, and that's where the instruction comes from. But there's not even a mention about Aguilar in People v. Murray in 2019. And so coming here and making this argument, we believe that it's incorrect and that they're appealing to the wrong authority, essentially, that they need to go directly to the Supreme Court to gain the relief. And that would be with a supervisory, asking for a supervisory order? We believe so, yes, Justice. And I think that having, as you all mentioned, the opposing counsel cannot cite any authority that says that a constitutional issue prevails over the mandate, and I could not find that. I also could not find any precedent involving a mistake by the Illinois Supreme Court. And so I think that's why we're in this vague and anomalous situation, essentially. But I think that going further and saying that a constitutional issue, or a constitutional, unconstitutional issue, that this intermediate appellate court has the authority goes too far. It essentially abrogates the Illinois Supreme Court's supervisory authority in the state of Illinois, and we don't think that's the correct ruling here. Clearly in Brown, the court itself said recently, and emphasized really, that the order entered after remand is just the ministerial act of implementing the Supreme Court's judgment and must be regarded as free from error. That's almost a direct quote from Brown at paragraph 24. I think that puts what we're looking at in context, does it not? Right, and it's almost free from error. I think that in Brown as well, that is somewhat distinguishable because that mandate, I don't believe, was unconstitutional. It's just that the trial court disagreed with it. Here, the trial court didn't expressly disagree, but was confused about what action to take. I'm sorry to interrupt, but I wouldn't necessarily characterize the trial court as being confused. As I read the record, I think the trial court felt constrained, confused. I think the trial court knew exactly what it was doing when it entered the order and resentenced the defendant. Sorry for the interruption, counsel. No, no, perfectly fine. I think that also the order, I believe, I have the language right here, that the case be remanded ordering that October 16, 2018 judgment order dismissing defendant's information be vacated and then modified to exclude the ruling. So that is very clear language, similarly to the language that we have here in Peeble v. Murray. The Illinois Supreme Court wanted the circuit court to sentence on the conviction for the AUW's charge. And they point out the section, and then they also point out the provision in the statute that has a sentencing that outlines how many years the defendant would get. It seems very clear what the Illinois Supreme Court wanted. And, of course, the Illinois Supreme Court has heard numerous cases extending and further litigating Aguilar since 2013. And so they knew what they were doing here. But because of the fact that neither party made arguments on the unconstitutionality, they couldn't do anything. The Illinois Supreme Court simply couldn't make an argument or rule on an issue that wasn't presented to them in the first place. I think I don't want to belabor the point. Counsel, just briefly, and I know on page nine of your brief, you mentioned alternatively suggesting that you could use the Figueroa case in Supreme Court Rule 615. Is that correct? Yes, yes, Justice Leonard, that is correct. I also note that Figueroa is a Rule 23 order, but that comes – that Figueroa is in a direct application of people v. Cannybrew, a 2013 case, which is perfectly – has been used and is, yeah, well set of law, it seems. Just suggesting this application only in the event that this court would find that your argument that the trial court was required to abide by the mandate, correct? Yes, Justice Leonard, so I prepared this argument in the fact that this court felt it had to act to give the defendant relief. It's an alternative argument in case you don't find our first primary argument persuasive. I think it's very simple. There is testimony from the trial court that shows that the defendant did not have a FOID card provision, and so that is another factor, a constitutional factor, that can be used to enhance the defendant's conviction in the statute. Thank you. However, I guess I wonder really how helpful that case is because it did not involve a remand with directions from the Supreme Court. So it was the appellate court, and I authored that case, that was reviewing what had taken place at the trial court and did not involve the Supreme Court at all. So I'm not sure it gives us the authority that perhaps you're suggesting we might have. I'm sorry, Justice Zinuff. Are you referring to Figueroa or – Figueroa. Figueroa. I see. Well, I think that – perhaps it doesn't, but I know that in that case the state presented the argument that they were abandoning the higher-level charge and instead seeking conviction on the lower-level offense. The lesser included. Yeah, the lesser included. My apologies. And so I think perhaps it's not the same situation, but it is an action that the state believes this court could take pursuant to Rule 615B3. I think without further questions, the state would ask this court to affirm the trial court's ruling. Yes, sorry. Thank you, Counsel. I see no further questions. Rebuttal. Thank you, Your Honor. Once again, to my favorite case in Ray and G, I've pulled up a quote from there where it says – speaking of this exact constitutional issue. If the constitutional infirmity is put in issue during a proceeding that is pending before court, the court has an independent duty to vacate the void judgment and may do so sua sponte. So that is our Supreme Court saying that this court has the independent duty to review this infirmity, the constitutional infirmity, and to address it, and that it cannot let this constitutional infirmity stand. And again, not to be a broken record, I think if the court were handing down that language in the context of a mandate case, I think you'd probably have all of us nodding our heads up and down in agreement. And it could be that this case goes up on a PLA and then the next person who stands in my shoes will have that perfect language and I will be happy to have provided it for them. What I would suggest to this court is that to do what the state is asking and to affirm the trial court order is, first of all, erroneous because the court seems to agree that there is the gist of a constitutional claim. And I would ask that because if the, if this court affirms the trial court, and Mr. Murray filed a petition for leave to appeal, and the Supreme Court did not present even the gist of a constitutional claim to have the state file a petition for leave to appeal, and to then have, give the Supreme Court the opportunity to instruct further on its 2019 Murray decision. And I would ask that because if the, if this court affirms the trial court, and Mr. Murray files a petition for leave to appeal in the Illinois Supreme Court, and that petition for leave to appeal is denied, then his unconstitutional conviction will be stagnant at that point. He will still be sentenced under a law that is repugnant to the Second Amendment of the United States Constitution, which I believe is an outcome that, as I have quoted from, in Ray NG, this court does not have the authority to uphold. It must address this issue, even if it must do so sua sponte. And certainly courts have been, have been doing so consistently since Aguilar, Mosley, and Burns have been decided over the past 10 years. These, these convictions have been strucken down left, right, and center, though admittedly they did not have a mandate from the Illinois Supreme Court on the issue. Counsel, I have a question. You have referred to this NG case a number of times today in your argument. However, in looking at your briefs yet again, as Justice Kavanaugh pointed out, I believe, or I mentioned it, NG appears in one line in your reply brief. And it's used for the quotation, when a statute is found to be facially unconstitutional in Illinois, it is said to be void ab initio. That is, it is as if the law had never been passed, citations had never existed. But there is no place that you expound on that and how it applies to this case. You've done so today in your oral argument, but no place in the briefs. And why have you not done that in your brief? Your Honor, I apologize if I did create that oversight, and I would be more than happy to submit supplementary briefing on the issue. I believe that in both the Mr. Murray's briefing, as well as the state's briefings, we concentrated on a different issue. I believe that neither one of our briefings was as directly on point as to the Supreme Court's authority, or I'm sorry, this court's authority to either follow or not follow the Supreme Court's mandates. And perhaps we need to rebrief on that issue. Well, Justice Kavanaugh, I think in his question, perhaps elicited the response that the case does not involve a remand with directions by the Supreme Court. Isn't that correct? Correct. Your Honor, as the state alluded to, neither of us could find a case where the Supreme Court issued an unconstitutional mandate and the appellate court later commented on the unconstitutionality of that mandate. So for that reason, this court would be the first court to have to decide whether it is, excuse me, my time has elapsed. May I briefly just finish my thought? Please. Thank you, Your Honor. Whether the court is absolutely bound by the Illinois Supreme Court, such that even if the Illinois Supreme Court itself violates the Supreme Court of the United States, I'm sorry, the Constitution of the United States, or whether this court should follow the Supreme Court's precedence that states that if there is a constitutional issue, this court must address it and must hold that it is unconstitutional and vacate any sentence that is predicated on an unconstitutional statute. And I recognize that I do not have a case that states that proposition. It is simply my extrapolation from the existing case law. So my time having elapsed. And if there are no further questions, I'll thank this court. Thank you. Are there any further questions with regard to that answer? No. Very well. Thank you, counsel. Thank you all. This time, the court will take the matter under advisement, and we will stand in recess at this time.